UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

Criminal No. 14-CR-20589-01

vs.

HON. BERNARD A. FRIEDMAN

SOPHIA EGGLESTON,

Defendant.
______________________________/

**OPINION AND ORDER DENYING DEFENDANT'S MOTIONS FOR COMPASSIONATE RELEASE AND REINSTATEMENT OF BOND**

This matter is presently before the Court on defendant's motion for compassionate release (ECF No. 255) and motion for reinstatement of bond (ECF No. 257), both of which are fully briefed. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall deny both motions.

In November 2018, defendant was convicted of Conspiracy to Receive Healthcare Kickbacks, in violation of 18 U.S.C. § 371, and two counts of Receipt of Kickbacks in Connection with a Federal Health Care Program, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A). Defendant was sentenced to 60 months' imprisonment on June 26, 2019, but was granted various extensions to her self-report date in light of her medical ailments and the risks posed by the Covid-19 pandemic. The most recent extension, which the Court granted in January 2021, extended defendant's self-surrender date to September 1, 2021. *See* Op. & Order (ECF No. 246). After receiving reports from defendant's pretrial services officer indicating that defendant had traveled out of state and was able to perform basic daily activities without assistance, the Court held a hearing in this matter on July 27, 2021. On July 29, 2021, the Court issued an order revoking defendant's bond and requiring the

United States Marshals Service to detain defendant until she is designated to an institution by the United States Bureau of Prisons ("BOP") and to place defendant in a facility with appropriate medical care. *See* Order (ECF No. 252). In that order, the Court stated:

> The Court has repeatedly extended defendant's surrender date based on representations that she suffers from dire medical conditions (*see* ECF Nos. 192, 198, 219, 226, 234, 240, and 246). Most recently, in an order entered on January 27, 2021, the Court extended defendant's surrender date . . . , "[i]n light of the ongoing Covid-19 pandemic and its impact on Bureau of Prisons [("BOP")] facilities" (ECF No. 246), and defendant's representations that "her [medical] conditions severely limit her mobility, which requires her to rely heavily on caretakers to perform basic functions such as using the restroom, clothing, and bathing" (ECF No. 244 at 8). Because the number of active Covid-19 cases has dramatically decreased at BOP facilities and because the Court is aware that defendant is now well enough to travel out of state, the Court believes defendant may now begin serving her prison sentence

*Id*. at 1. At the July 27, 2021, hearing, defense counsel indicated that defendant was previously designated to FCI Hazelton in Bruceton Mills, West Virginia. However, to the Court's knowledge, the BOP has yet to transfer her to FCI Hazelton or any other BOP facility.

**I. Defendant's Motion for Compassionate Release**

In her motion for compassionate release, defendant requests that the Court "change her sentence to supervised home confinement." Def.'s Br. at 1. Defendant argues that "incarceration places her in imminent risk of serious illness or death . . . particularly . . . in the context of the Covid-19 pandemic and the ongoing risks presented by the Delta variant." *Id*. at 2. Defendant contends that she suffers from various medical conditions "including a chronically infected right tibia, osteomyelitis (bone infection), a cerebral pseudotumor producing recurring swelling in the cranial cavity, chronic hypertension, kidney failure, morbid obesity, and opioid dependency." *Id*. The government opposes the motion on the grounds that (1) the Court "does not

have authority to grant home confinement" and (2) defendant "has not presented extraordinary and compelling circumstances." Pl.'s Resp. Br. at 1.

The Sixth Circuit has clarified "how district courts, following the enactment of the First Step Act, should analyze defendant-filed motions seeking release under § 3582(c)(1)(A)." *United States v. Hampton*, No. 20-3649, 2021 WL 164831, at *1 (6th Cir. Jan. 19, 2021).

> In resolving those motions, district courts now face two questions: (1) whether extraordinary and compelling circumstances merit a sentence reduction; and (2) whether the applicable § 3553(a) factors warrant such a reduction. A third consideration, the § 1B1.13 policy statement, is no longer a requirement courts must address in ruling on defendant-filed motions.

*Id*. (citations omitted).

The Court has considered these factors and concludes that compassionate release would not be appropriate in this case. First, the Court is aware that defendant's underlying health conditions – hypertension, kidney failure, morbid obesity, and opioid dependency – increase or might increase her risk of severe illness if she were to contract Covid-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 25, 2021). However, the number of positive Covid-19 cases at FCI Hazelton is quite low. The BOP presently reports one positive case at the facility (one inmate and zero staff). *See* https://www.bop.gov/coronavirus (last visited Aug. 25, 2021).

In its response brief, the government also notes that the BOP has taken significant steps to minimize the spread of the virus at all BOP facilities, including through a mass vaccination campaign. *See* Pl.'s Resp. Br. at 5. According to the Centers for Disease Control and Prevention,

> [t]he COVID-19 vaccines authorized in the United States are

> highly effective at preventing severe disease and death, including against the Delta variant. But they are not 100% effective and some fully vaccinated people will become infected (called a breakthrough infection) and experience illness. For such people, the vaccine still provides them strong protection against serious illness and death.

*See* https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (last visited Aug. 25, 2021). Although the trajectory of the Covid-19 pandemic is unknown, given the low positive case rates across the vast majority of BOP facilities and the existence of highly effective and publicly available Covid-19 vaccines, the Court does not believe that defendant's circumstances are extraordinary and compelling.

Finally, the Sixth Circuit has "repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling' reasons would otherwise justify relief." *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020). When making sentencing determinations, courts are required to consider "the nature and circumstances of the offense," as well as "the need for the sentence imposed . . . to promote respect for the law, . . . afford adequate deterrence to criminal conduct, . . . [and] protect the public from further crimes of the defendant." Sections 3553(a)(1), 3553(a)(2)(A)-(C). In its response brief, the government summarizes defendant's offense as follows:

> Over the course of at least three years, the Defendant and her co-conspirators ran a home health care scheme that involved overbilling Medicare for patients who did not qualify for services, and paying illegal kickbacks to recruiters. The Defendant's role in the conspiracy was that of a patient recruiter. She would pose as a nurse, approach elderly and/or disabled individuals eligible for Medicare benefits, and convince them to provide her with their Medicare beneficiary information. She would thereafter threaten these beneficiaries if they refused to go along with the fraudulent scheme to bill Medicare for the unnecessary home health services, telling the patients that she would withhold payment from their

> legitimate caregivers if they did not cooperate. In exchange for her recruitment of these patients, the Defendant was given a per-patient kickback of between $750-$1,100 by the fraudulent medical "providers."

Pl.'s Resp. Br. at 1-2. The government adds that defendant "was ultimately responsible for the submission of over $1.5 million of claims for payment to Medicare through this scheme." *Id*. at 2. As the Court stated at sentencing, defendant "victimized people that were infirm, that did not have the ability to defend . . . themselves" and she "knew exactly what she was doing." Sent'g Tr. at 18. Defendant also has an extensive criminal history. *See id.* at 9. Despite this demonstrated lack of respect for the law, and the severity of her offense, defendant now seeks release after serving only one month of her 60-month sentence. Medicare fraud schemes steal from the public, erode public trust in federal programs, and are widespread in this district. Under the facts of this case, the Court finds that the sentencing objectives outlined in § 3553(a), and the need for both specific and general deterrence in particular, weigh strongly against early release and will therefore deny defendant's motion.[1]

**II. Defendant's Motion for Reinstatement of Bond**

In her motion requesting reinstatement of bond, defendant states that she "is in a county jail where she is experiencing health issues that are potentially life threatening while she awaits designation to a Bureau of Prisons (BOP) medical facility. Her incarceration at non-medical facilities and travel in the BOP transit system pose significant health risks." Def.'s Bond Br. at 1. Defendant states that she "has been admitted into the hospital twice since she was taken into custody," once for "a lumbar puncture to relieve intracranial pressure" and later

[1] As the government notes in its response brief, the Court does not have the authority to convert defendant's sentence from incarceration to home confinement. *See* Pl.'s Rep. Br. at 3 n.1. Such decisions are left to the BOP pursuant to 18 U.S.C. § 3621(b).

following a fall at the Sanilac County Jail. *Id*. at 3-4. Defendant contends that "the jail is not providing her prescription medication and is only providing Motrin and/or Tylenol. It is not providing the myriad medications she has been prescribed, which include Oxycodone and Percocet in various doses and combinations, Furosemide (Lasix), Ketorolac (a pain reliever), Simvasitin (a cholesterol-reducing statin), and Alprazolam (Xanax)," which, defendant indicates, is causing her to go through opiate withdrawal. *Id*. Defendant also complains of "pain relating to her ankle and tibia injury." *Id*. at 4. Given these various health conditions and the risks posed by the Covid-19 pandemic, defendant requests that the Court reinstate her bond pending the resolution of her § 3582 motion or, alternatively, allow her to self-report to a designated federal medical center. *See id.* at 7-8.

In response, the government states that "the factors that influenced this Court's decision to require the Defendant . . . to begin serving [her] sentence on July 27, 2021 remain in full force today," and that defendant's motion should therefore be denied. Pl.'s Bond Resp. Br. at 1-2.

The Court does not believe that reinstatement of bond is warranted in this case. In relevant part, 18 U.S.C. § 3143(a), states:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released.

"There is a presumption against release and the burden is on the defendant to demonstrate reasons that justify release. The decision to grant or deny such release is within the district court's discretion." *United States v. Mosely*, No. 17-20652, 2019 WL 698149, at *2 (E.D. Mich. Feb.

20, 2019) (citation omitted). In light of the severity of defendant's offense and because over two years have passed since defendant was sentenced, the Court believes it is well past time that defendant begin serving her sentence. Moreover, as defendant's motion indicates, she presently has access to hospital care when necessary. The Court therefore declines to reinstate bond in this case.

**III. Conclusion**

For the reasons stated above,

IT IS ORDERED that defendant's motion for compassionate release (ECF No. 255) is denied.

IT IS FURTHER ORDERED that defendant's "motion for leave to file her motion for reinstatement of bond under seal" (ECF No. 256) is granted, as defendant has already filed that motion.

IT IS FURTHER ORDERED that defendant's motion for reinstatement of bond (ECF No. 257) is denied.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: August 26, 2021
Detroit, Michigan